### SAYER v. KING et al.

(Supreme Court, Appellate Division, Second Department. October 5, 1897.)

ACCIDENT AT CROSSING—EVIDENCE.

Plaintiff, while crossing the railroad operated by defendants, was struck by an engine and injured. Testimony on his behalf was that on approaching the track he stopped, looked, and listened, and saw and heard nothing of the train; that from that point there was no view up the track; that no bell was rung or whistle sounded till about the moment of the accident. Defendants' evidence was that the bell was rung and the whistle sounded at the proper time, and a survey made shortly before the trial showed a long and uninterrupted view of the track between the spot where plaintiff stopped to look and the crossing. This plaintiff explained by the fact

that high shrubs, which at the time of the survey had been removed, had shut off the view. *Held*, that a motion to dismiss the complaint was properly denied, and that the verdict for plaintiff was not against the weight of the evidence.

Appeal from trial term, Orange county.

Action by John Sayer against John King and John G. McCullough, as receivers of the Lake Erie & Western Railroad Company. From a judgment for plaintiff on a verdict, and an order denying a new trial, defendants appeal. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Henry Bacon, for appellants.
W. F. O'Neill, for respondent.

BRADLEY, J. The action is founded upon the charge of negligence against the defendants, who at the time in question were operating what is commonly known as the "Erie Railroad." The consequence of the alleged negligence was the personal injury of the plaintiff, who on December 18, 1894, in his wagon, drawn by a single horse, was proceeding upon the track of that railroad at what was known as "Pierson's Crossing," in the county of Orange, when he was struck by an engine drawing a passenger train known as "No. 30." This occurred about 4:30 o'clock in the afternoon. It was then daylight, and clear. The alleged negligence of the defendants was that no warning was given of the approach of the train to the crossing. The evidence on the part of the plaintiff was that of witnesses who were situated so as to have heard the signal, if given, and who testified that no bell was rung or whistle sounded upon the engine until about the moment that it struck the plaintiff's wagon. This is contradicted by the evidence of the engineer, who testified that the bell was rung and the whistle was sounded for the requisite distance from the crossing, until it reached there. And a passenger on the train also testified that he heard the bell and whistle shortly before the collision. Upon the subject whether or not the duty resting upon the defendants, through their employés, was in that respect performed in the manner required of them on approaching the crossing of a public highway, was, upon the evidence, a question of fact for the jury. The burden was also upon the plaintiff to show that his injury was to no extent attributable to his want of due care to avoid the accident. He was familiar with this crossing and its surroundings. His business was peddling. His wagon, in which he carried his goods, had a top open in front and rear, and an opening on the side large enough for a person to get in and out of the wagon. He resided at Otisville, and was on his way home from Middletown. As he approached the railroad his course was northerly in the public highway. His horse was perfectly under his control. When at the top of the hill, about 10 rods from the track, he stopped and looked and listened. He says that he heard no train and saw none, other than one a mile away, going west; that he then proceeded on the descent to the crossing; that there was an embankment from the place where he had stopped, so that a view to the west was entirely cut off until the railroad track

was reached, and that until then he could not see the approaching train; and that he did not hear it. His horse had got across the east-bound track when the engine of the train going east struck the wagon, causing the injury complained of. The evidence of two other witnesses on the part of the plaintiff tends to corroborate his statement of the conditions which shut off his view of the train until he reached the tracks of the railroad at the crossing. They saw the accident, and one of them testified that she saw the plaintiff stop on the hill before proceeding down to the crossing. The contradictory evidence on the subject was that of a civil engineer then in the service of the defendants, who testified that he was at the place in question shortly before the trial, which took place in January, 1897, and made a survey and map, which was an exhibit; that at a point in the highway 100 feet southerly from the crossing a team on the railroad could be seen for a distance of 525 feet west from the crossing; that at a point in the highway 85 feet from the crossing a team could be seen 4,200 feet west from there; and that there was no obstruction to the view in that direction from that point in the highway to the crossing, but that between those two points there was an obstruction to the view. There was a house and a barn on the westerly side of the highway at a distance somewhere between 40 and 100 feet from the crossing. After the defendant rested the plaintiff further testified that at the time of the accident there were shrubs six or eight feet high between the barn and the railroad, in addition to the embankment, to shut off the view to the west, and that since then the shrubs had been cut away. Upon both propositions, as to the negligence of the defendants and as to the freedom of the plaintiff from contributory negligence, the evidence presented questions of fact for the jury, and therefore the motion to dismiss the complaint was properly denied. And the view which the jury were permitted to take of the conflicting evidence was such that it cannot be seen upon this review that the verdict was against the weight of the evidence.

The judgment and order should be affirmed. All concur.